**GABANA GULF DISTRIBUTION, LTD., a company organized under the laws of the United Kingdom; et al., Plaintiffs–Appellants,**

v.

**GAP INTERNATIONAL SALES, INC., a Delware corporation, Defendant–Appellee.**

No. 08–15266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 2009.

Filed Aug. 24, 2009.

Shaudy Danaye–Elmi, Sarah Givan, Martin Glick, Howard Rice Nemerovski Canady Falk & Rabkin a Professional Corporation, San Francisco, CA, G. Steven Fender, Esquire, Hal K. Litchford, Esquire, Keith E. Rounsaville, Esquire, Litchford & Christopher, Orlando, FL, for Plaintiffs–Appellants.

Christa M. Anderson, Esquire, Rose Darling, Esquire, Dan Jackson, Esquire, Keker & Van Nest LLP, San Francisco, CA, for Defendant–Appellee.

Before: SILVERMAN, CLIFTON and M. SMITH, Circuit Judges.

### MEMORANDUM *

Plaintiffs Gabana Gulf Distribution, Ltd. and Gabana Distribution, Ltd. (collectively, "Gabana") appeal the district court's grant of summary judgment in favor of Defendant Gap International Sales, Inc. on Gabana's breach of contract claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The district court correctly concluded that the material facts are not disputed and the contract between Gabana and Gap was not a franchise agreement under California law. The undisputed facts show that Gabana was merely a distributer or wholesaler of Gap *products,* but not substantially associated with Gap's *trademarks.* In fact, the contrary is the case: Gabana was expressly prohibited by contract from associating itself with Gap's trademarks beyond selling its merchandise.

The dissent supports its conclusion with non-California cases that we do not find persuasive. The Third Circuit's conclusion that the product-trademark distinction was "ephemeral" was limited to "the context of [that] case" in which (1) the franchisee was the sole distributor of the franchisor's products in the relevant region for 30 years, (2) the franchisee's customer's testified that they considered the franchisee and franchisor "one and the same," and (3) some of the franchisee's employees wore the franchisor's uniforms. *Cooper Distrib. Co. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 267, 271, 273 (3d Cir.1995). To whatever extent the dissent is supported by *Wright–Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 135 (7th Cir.1990), we note that the Seventh Circuit reversed course when analyzing the very same statute in *Hoosier Penn Oil Co. v. Ashland Oil Co.,* 934 F.2d 882, 886 (7th Cir.1991). There, the court rejected the argument that merely selling a product with a trademark attached created a substantial association with that trademark. *Id.*

Furthermore, Gabana did not establish that it paid a "franchise fee," as distinguished from a mere purchase of product at fair market value. *See* Cal. Bus. & Prof.Code § 20007. By its own terms, the Excess Inventory Agreement purports to be a contract for the sale of goods. Gabana has not shown it to be anything other than that.

For these reasons, the district court correctly ruled that Gabana's arrangement with Gap was not a "franchise" as defined by California Business and Professions Code section 20001.

AFFIRMED.

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent. I believe that the majority has misapprehended both the applicable law and the facts.

The element of California Business and Professions Code § 20001 requiring "substantial association" with a franchisor's

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

trade name or other commercial symbol must be analyzed from the perspective of the putative franchisee's customers. *See Kim v. Servosnax, Inc.,* 10 Cal.App.4th 1346, 1353, 1356–57, 13 Cal.Rptr.2d 422, 426, 427–28 (1992); *see also Cooper Distrib. Co. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 273 n. 10 (3d Cir.1995). The question is whether the distribution arrangement pursuant to the contract was such that those customers "associated" Gabana's business operation with Gap's reputation and goodwill. *Kim,* 10 Cal.App.4th at 1355–57, 13 Cal.Rptr.2d at 427–28; *see also Cooper,* 63 F.3d at 272–73 (substantial association exists where a distributor's customers perceive that the manufacturer effectively endorses the quality of the product being distributed or otherwise vouches for the distributor's activity).

The evidence strongly supports a conclusion that such a connection was perceived by Gabana's customers, the retailers in the specified Middle Eastern nations who sold the Gap products to the ultimate consumers. Those retailers did not simply sell shirts, pants, and other products that just happened to bear a "Gap" label. If that was all they wanted to do, they could not even obtain those products. By Gap's own description, the retailers had to be approved by Gap and were required to sell Gap products in specified "store-within-store" displays. Their stores were sometimes inspected by Gap personnel, and they received detailed instructions on how they were to achieve the "Gap look," down to the precise color of paint to be used in the Gap display. The retailers used Gap advertising and other promotional material, available to them only via Gabana. In that context, I fail to understand how it can be concluded as a matter of undisputed fact that Gabana was viewed only as a source of products and was not substantially associated by its customers with Gap's trademarks, trade name, and adver-

tising. Those customers received much more than shirts from Gabana.

Gabana was the sole distributor for Gap's labeled product line in the defined geographic region. In that context, any distinction between Gabana's promotion of Gap's *product* and its *trademark* is "ephemeral." *See Cooper,* 63 F.3d at 273; *Wright–Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 135 (7th Cir.1990). Franchise is a mutable concept, and in light of the protective purpose of California's Franchise Relations Act, I would construe "substantial association" liberally to encompass situations like the one created by the distribution contract in this case. *See Kim,* 10 Cal.App.4th at 1355–56, 13 Cal.Rptr.2d at 427.

Nor do I share the majority's view that the undisputed facts precluded Gabana's claim that it paid a franchise fee. The district court made no such finding. Given a substantial record and Gabana's assertions regarding the excess inventory purchase, I would leave that argument and the other alternative grounds offered on appeal by Gap to be parsed by the district court in the first instance. I would reverse the existing summary judgment and remand for further proceedings.